## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISCTRICT OF PENNSYLVANIA

IAN M. RICHETTI, ADMINISTRATOR         :
OF THE ESTATE OF AMANDA CAHILL,   :
DECEASED                                :
609 West Hamilton Street, Suite 301     :
Allentown, PA 18101                     :
                *Plaintiff*         :
                                  :
        v.                           :
                                    :
CITY OF PHILADELPHIA                    :
1515 Arch Street, Suite 15              :     Civil Action No.
Philadelphia, PA  19102                 :
                                    :
        and                          ;
                                    :
JOHN DOES 1-10                          :
8301 State Road                         :
Philadelphia, PA 19136                  :
                                    :
        and                          :
                                    :
ABC CORPS. 1-5                          :
8301 State Road                         :
Philadelphia, PA 19136                  :
             *Defendants*         :

## CIVIL ACTION COMPLAINT

      NOW COMES Ian Richetti, as Administrator for the Estate of Amanda Cahill, complaining of Defendants the City of Philadelphia, John Does #1-10 and ABC Corps. #1-5 and for cause would show the Honorable Court as follows:

### NATURE OF THE CASE

      1.    On September 7, 2024, Amanda Cahill ("Ms. Cahill") died from the effects of suspected untreated Fentanyl overdose while incarcerated at the Philadelphia Institutional

Correctional Center. Overdose is treatable medical emergency. Defendants were aware of her condition and knew that she required monitoring and treatment as she recovered, yet failed to provide them. Defendants' deliberate indifference to Ms. Cahill's serious medical condition is the cause of Ms. Cahill's unnecessary and preventable death.

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff, Ian Richetti, is the duly appointed administrator of the Estate of Amanda Cahill and is an adult individual and resident of the Commonwealth of Pennsylvania.

2.    This action is brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the Constitution of the Commonwealth of Pennsylvania, and Pennsylvania Law.

3.    This cause of action arose in Philadelphia County, Pennsylvania.

4.    Defendant, City of Philadelphia, a City of the First Class organized and existing under the laws of the Commonwealth of Pennsylvania was responsible for the creation and operation of the Philadelphia Department of Prisons (hereinafter "PDP") including, but not limited to, the Philadelphia Industrial Correctional Center (hereinafter "PICC"). PICC is located at 8301 State Road, Philadelphia, Pennsylvania.

5.    Defendants John Does 1-10, fictitious names whose present identities are unknown, are unidentified persons who, at all times material hereto, were employees, agents and/or servants of the City of Philadelphia and were acting under color of state law in the course and scope of their duties at the PICC.

6.    Defendants ABC Corporations 1-5, fictitious names whose present identities are unknown, are unidentified persons and/or entities who, at all times material hereto, contracted with the City of Philadelphia to provide medical treatment to people incarcerated at PICC and were responsible for hiring competent medical providers, implementing and enforcing appropriate

2

policies, procedures, protocols, customs, and practices for the care of PICC's inmates, and training, supervising, and disciplining those medical providers to ensure their competence.

7.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourteenth Amendment rights of Amanda Cahill. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §§ 1367 to adjudicate pendent state law claims.

8.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(2) where the events or omissions giving rise to the Plaintiffs' federal claims occurred within the geographical limits of this District.

9.    This action is also brought under the laws of the Commonwealth of Pennsylvania as Wrongful Death and Survival action pursuant to claims arising from Defendants' deliberate and malicious indifference in failing to adequately staff PICC for proper supervision of incarcerated people and failing train its various personnel in the recognition and treatment of medical issues in arrestees and incarcerated people and further depriving decedent Amanda Cahill of her rights to both due process, equal protection, and emergency medical care while incarcerated.

## FACTUAL BACKGROUND

8.    On September 4, 2024, Amanda Cahill was arrested on possession of drug charges during a coordinated police sweep in Kensington, Philadelphia.

9.    The sweep was part of the City's ongoing initiative to "clean up" Kensington, which has included increased police presence, the dismantling of unhoused encampments, and coordinated mass arrests in the Kensington neighborhood, beginning in May of 2024.[1]

---

[1] "9 months after Kensington cleanup, Philly officials offer progress report" by Tom MacDonald. THE PHILADELPHIA TRIBUNE. Feb. 25, 2025. https://www.phillytrib.com/9-months-after-kensington-cleanup-philly-officials-offer-progress-report/article_df1a0b95-1d39-5600-94f7-09d914bb0aeb.html. Last accessed Aug. 23, 2025.

10.     On September 4, 2024, after being arrested and booked at the Philadelphia Police Department headquarters located at 400 N. Broad Street, Philadelphia, PA 19123, Ms. Cahill was taken by EMS transport to Pennsylvania Hospital, located at 800 Spruce Street, Philadelphia, PA 19107 to be treated for addiction related issues.

11.     Upon information and belief, Ms. Cahill was subsequently transferred to PICC that same day or the following day. Medical treatment housing was available, but Ms. Cahill was placed in general population.

12.     Upon information and belief, while incarcerated at PICC, Ms. Cahill was acutely, objectively and obviously suffering from addiction and substance abuse.

13.     Upon information and belief, Ms. Cahill did not receive regular medical evaluations and/or monitoring during her stay at PICC, despite exhibiting outward and obvious symptoms of substance abuse issues.

14.     Dangerous physical symptoms, including a potentially fatal overdose, are known risks of substance abuse issues.

15.     Upon information and belief, during the early morning hours of September 7, 2024, Ms. Cahill repeatedly and consistently cried out for medical attention from the confines of her cell, begging for help and banging on the walls in order to capture the attention of the guards on duty.

16.     Upon information and belief, multiple inmates in the immediate area of Ms. Cahill's cell were aware of her medical condition and, believing her to be in immediate danger, yelled out and banged on the walls in order to assist in capturing the guards' attention.

17.     Despite the repeated and desperate efforts of Ms. Cahill and the other inmates, Ms. Cahill was not evaluated or provided any medical attention whatsoever.

18.    John Doe(s) correctional officer(s) completing mandatory surveillance and patrolling in the cell blocks had subjective knowledge of Ms. Cahill's medical emergency and failed to administer life-saving care.

19.    At approximately 7:45 a.m. on September 7, 2024, Ms. Cahill was found unresponsive in her cell at PICC.

20.    Upon information and belief, Ms. Cahill's cause of death was suspected fentanyl overdose, an otherwise treatable and preventable medical emergency.

21.    Based on the autopsy, Ms. Cahill's vitreous fentanyl levels indicate that the fatal dose of fentanyl was consumed within hours of her death.

22.    Therefore, upon information and belief, Ms. Cahill was sold and/or given fentanyl while in the custody of the City of Philadelphia.

23.    The use and trafficking of illegal drugs within Philadelphia Prisons has been wide spread and well known to the City and has been exacerbated by the City's chronic understaffing of the jails.

## FAILURES OF THE PHILADELPHIA DEPARTMENT OF PRISONS

24.    For years, the PDP has displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision.

25.    Prison Commissioner Michael Resnick (who assumed his post on April 8, 2024 after prior Prison Commissioner Blanche Carney's retirement, and had previously been the Acting Prison Commissioner in 2016) as well as Warden Earicka Patterson and prior Warden Norman Williams have long been aware of the dangers created by their failure to maintain proper staffing.

26. Not only did the City of Philadelphia tolerate the escalating danger from their lack of staffing, but prior Commissioner Blanche Carney also went so far as to blame the issue on the general staffing shortages caused by the COVID-19, despite evidence that this practice existed long before the pandemic.

*PDP's Established Practice of Understaffing*

27. According to the Philadelphia Office of the Controller, from 2019 to April of 2021 the PDP saw staff vacancies triple and conditions within the facilities become increasingly unsafe.[2]

28. During her tenure, former City Controller Rebecca Rhynhart expressed concern with staffing, stating:

> In June, my office released an analysis of the Department of Prisons, showing the department was operating 382 officers below the approved level for officer and inmate safety. The city made considerable progress reducing the prison population between 2015 and 2019, but the population has only decreased by about 2% since 2019. Prison staffing levels, meanwhile, have dropped by 28% over the same time."

29. This assessment was based on data provided by PDP which showed that from 2019 – 2021, correctional staffing declined by 440 officers and only 119 new officers were hired within that same period. At the time of the statement, Rhynhart indicated that more than 300 COs were needed to meet adequate staffing.

30. The City of Philadelphia acknowledged the danger that the staffing shortages create, pointing to the five inmate on inmate homicides in PDP facilities from August 2020 – May 2021. A total that exceeded the prior eight years combined.

---

[2] Philly's shockingly inhumane prison conditions by Rebecca Rhynhart: THE PHILADELPHIA INQUIRER. Published Oct. 6, 2021
https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html

31.     The *Philadelphia Inquirer*, frequently reported on the failures of the PDP, including an April 23, 2021 article that stated that there were shifts where as many as 14 of the 15 workers abandoned their shifts.[3]

32.     On May 19, 2021 it was reported that 64% of staff called out on Mother's Day weekend.[4]

33.     Prior Commissioner Carney acknowledged that PDP was short 333 staff positions.

34.     This number continued to grow, and in June 2021 it was then reported that PDP was short 382 officers needed to operate safely.

35.     By August 26, 2021 the gap had grown to 483 officers.

36.     In an August 26, 2021 report, the Pennsylvania Prison Society executive Director Claire Shubik-Richards stated "we have been warning the city for months that the prison is dangerous, unconstitutional in its conditions, and past the boiling point."[5]

37.     Correctional officers, including lieutenants, captains, and veterans of more than 20 years, told the Inquirer in October 2021 that the conditions in PDP facilities are the "worst they have ever seen."[6]

38.     It was then reported that the number of staff needed to operate safely had grown to 500.

---

[3] "Another assault at Philly jail leaves a man on life support and staff and prisoners warning of a crisis" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published April 23, 2021. https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html. Last accessed Aug. 23, 2025
[4] "Can Philly jails be forced to pay bail fund $10,000 a day? That's the ask in a federal lawsuit." by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html. Last accessed Aug. 23, 2025
[5] "'We need help': Video, reports depict violence and 'riots' at Philadelphia jails" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published August 26, 2021. https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html Last accessed Aug. 23, 2025.
[6] "Philly's shockingly inhumane prison conditions | Opinion"by Rebecca Rhynhart. THE PHILADELPHIA INQUIRER. Published Oct. 6, 2021. https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html. Last accessed Aug. 23, 2025

39.     Highlighting the danger in the Philadelphia Prisons is the fact that the PDP inmate population fell by 2% since 2019, yet over that same period seen staffing levels dropped by 28%.[7]

40.     On November 4, 2021, an analysis of PDP staffing rosters found that 20-30% of shifts on a given day were filled by officers and supervisors working overtime, and more than 40% of shifts listed were not filled at all.[8]

41.     David Robinson, the president of the correctional officers' union, Local 159 of AFSCME District Council 33, stated that "we're in a situation where we don't have staff. That makes the prisons dangerous…they had an obligation to keep these jails safe. And I'm going to be honest: I believe they failed."[9]

42.     By the November report, the City Controller's office claimed a 28% vacancy rate within PDP.

43.     Commissioner Carney suggested then and has since continued to suggest that the COVID-19 pandemic is to blame, however at the same time the Pennsylvania Department of Corrections reported only a 5.6% vacancy rate.

*PDP's History of Unaddressed Security Issues*

44.     During the week of September 21, 2022 the PDP decided to move its increasing women's population from the Alternative and Special Detention Central Unit to the Philadelphia Industrial Correctional Center.[10] They did this despite knowing the history of unaddressed security and staffing issues at PICC.

---

[7] *Id.*

[8] "Stabbings at Philly jail went unnoticed amid staff shortages, video shows" by Samantha Melamed and Dylan Purcell. THE PHILADELPHIA INQUIRER. Published Nov. 4, 2021. https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html. Last accessed Aug. 23, 2025

[9] *Id.*

[10] "Philly jails see increase in women who are incarcerated, move to consolidate population" By Tom MacDonald. PBS WHYY PUBLIC MEDIA FOR PENNSYLVANIA, DELAWARE, NEW JERSEY. Sept. 21, 2022. https://whyy.org/articles/philly-jails-increase-in-women-incarcerated-move-to-consolidate-population/. Last accessed Aug. 23, 2025.

45.     Nasir Grant and Ameen Hurst escaped from PICC on Sunday, May 7, 2023, and at a November 1, 2023 Public Safety Hearing, Philadelphia District Attorney Larry Krasner detailed the security failings at the facility dating back over ten years.[11]

46.     These failings include: motion sensors being turned off for over ten, the fence that the two men escaped from being cut and staff aware of it days before the escape, prison staff not finding out about the escape for 19 hours because staff were not doing physically doing the count and instead reporting prior numbers, a single staff member watching the entire cell block area asleep in her chair, and problems with the video surveillance technology and cameras not being monitored.

47.     DA Krasner explained that it took 90 seconds for Hurst and Grant to get out, and that "[b]efore this escape ever occurred, we all knew there were issues that were occurring".

48.     Bringing women with substance abuse issues to an environment with these known security and staffing issues represents deliberate and malicious indifference to serious medical need.

49.     Indeed the very failures to do a physical inspection count and to monitor the block, allowed Ms. Cahill's pleas for help to be left unaddressed.

*PDP's History of Unaddressed Drug Abuse in its Facilities*

50.     PDP has unfettered access to drugs, illuminated by their persistent pattern of drug overdoses and a deficiency in their response to the rampant drug problem.

51.     In 2023, a Philadelphia Inquirer review of medical examiner's data and court records has found that "at least 25 people who have died in the Philadelphia jails since 2018 of

---

[11] "Issues dating back more than a decade led to Philly prison escape, DA says" by Deanna Durante. NBC PHILADELPHIA. Published November 1, 2023. https://www.nbcphiladelphia.com/news/local/issues-dating-back-more-than-a-decade-led-to-philly-prison-escape-da-says/3683707/. Last accessed Aug. 23, 2025.

accidents related to drug intoxication." Importantly, "Some of the deaths were from overdoses; other people were going through withdrawal when they died, according to court filings."[12]

52.    Over one weekend in March of 2020, at PDP's Curran-Fromhold Correctional Facility, four men who arrived at the jail on drug charges overdosed and three of them died. All four cases involved fentanyl.[13]

53.    Andrew Drury, 42, was found unresponsive in the intake room of Curran-Fromhold Correctional Facility three days after his arrest in Kensington on drug charges. Just like Ms. Cahill, he was evaluated and received off-site medical treatment before being transferred to the jail and overdosing there. At least 29 people with substance abuse issues have died in Philadelphia jail or police custody since 2018 for reasons that appear connected to drug intoxication or withdrawal, according to medical examiner records reviewed by The Philadelphia Inquirer.[14]

54.    While Dr. Bruce Herdman, chief of medical operations for the Philadelphia Department of Prisons, admitted to only 19 overdose deaths in the city's jails since 2019, that number is still jarring and unacceptable. Dr. Herdman stated "the officer staffing shortage makes it difficult to deliver timely, high-quality care for the approximately 4,700 people incarcerated in Philadelphia's jails daily – a majority of whom present with substance use disorder." And that of those 19 overdose deaths, 16 died within the first week of arrival.[15]

---

[12] "Drug deaths and overdoses plague Philly jails, raising concerns about plans to step up Kensington arrests" by Samantha Melamed and Aubrey Whelan. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia/kensington-drug-arrests-jails-overdose-deaths-philadelphia-20240707.html?ref=kensingtonvoice.com. Last accessed Aug. 23, 2025.

[13] Philadelphia prisons investigating 4 overdoses, including 3 deaths, in custody" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published March 4, 2020. https://www.inquirer.com/news/philadelphia-prison-drug-overdose-fentanyl-heroin-deaths-20200304.html

[14] "A man in addiction who was arrested in Kensington last week died in jail days later" by Ellie Rushing and Samantha Melamed. THE PHILADELPHIA INQUIRER. Published March 11, 2025. https://www.inquirer.com/crime/inmate-death-philadelphia-jail-kensington-addiction-20250311.html Last accessed Sept. 9, 2025.

[15] "As city leaders eye jail to clean up Kensington, Philly jails say they're stretched too thin." by Sammy Caiola and Jillian Bauer-Reese. KENSINGTON VOICE. Published June 14, 2024. https://www.kensingtonvoice.com/jail-to-clean-kensington-drug-market-philly-jails-understaffed/ Last accessed Sept. 9, 2025.

55.     Incarcerated people are regularly being hospitalized for overdoses in Philadelphia Department of Prison's extremely understaffed facilities, and prisoners with serious health concerns resulting from drug dependency and abuse cannot be safely treated there. The City of Philadelphia has fostered an unsafe environment in the PDP, then rounded up individuals with serious addiction issues and locked them away in a location where the City knows they were not and cannot access help or treatment.

56.     While PDP has policies in place to provide medications for opioid use disorder, "severe short-staffing has hamstrung those policies — and fueled a climate of disorder and violence in the jails, which in the last few years have seen riots, a string of escapes, and dozens of deaths."[16]

57.     The acts and failures to act by City personnel and healthcare professionals to appropriately monitor and provide care to Amanda Cahill led to her untimely death.

## WRONGFUL DEATH ACTION

58.     Plaintiff brings this action pursuant to the Wrongful Death Act of the Commonwealth of Pennsylvania, 42 Pa.C.S.A. § 8301, to recover damages for the wrongful death of Amanda Cahill.

59.     No other action has been brought to recover for Amanda Cahill's death under the aforementioned statute.

---

[16] "Drug deaths and overdoses plague Philly jails, raising concerns about plans to step up Kensington arrests" by Samantha Melamed and Aubrey Whelan. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia/kensington-drug-arrests-jails-overdose-deaths-philadelphia-20240707.html?ref=kensingtonvoice.com. Last accessed Aug. 23, 2025.

60.     Decedent's survivors are her mother Gina Clark and sons, J.C. and J.M., minors who are entitled to recover damages for her death, and on whose behalf this action is brought pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 et seq.

61.     Ms. Cahill's death was caused by intentional, malicious, and/or grossly negligent conduct of said Defendants, individually and/or jointly.

62.     As a direct and proximate result of the Defendants' individual and joint actions, Amanda Cahill was unnecessarily caused extreme physical pain, mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

63.     As a further direct and proximate result of said Defendants' actions, decedent's survivors have suffered serious emotional pain and economic loss due to the wrongful death of Amanda Cahill.

64.     Plaintiff claims all available damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions that Amanda Cahill, would have rendered to the wrongful death beneficiaries but for her traumatic, untimely and unnatural death occurring as a result of the unlawful acts and omissions which are subject to the present litigation.

65.     Plaintiff claims damages for all medical bills and/or expenses.

66.     Plaintiff claims all damages for payment of funeral or burial expenses.

## **SURVIVAL ACTION**

67.     Plaintiff hereby incorporates all preceding paragraphs as is fully stated herein.

68.     Plaintiff brings this action pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. § 8302, for all recoverable damages under the Statute, including but not limited to loss of earnings, loss of earning power, loss of earning capacity, pain and suffering and emotional distress.

69.     As a direct and proximate result of said Defendants' actions as described herein, Amanda Cahill suffered grievous bodily injury, and mental and physical pain and suffering.

70.     From the time she was brought to PPIC until the time of her death, and throughout her detention, Ms. Cahill was conscious and aware of the denial of medical care and other harmful acts to which she was subjected by the Defendants, individually and/or jointly, and felt extreme pain and suffering as a result thereof while begging for help to save her life.

## COUNT I: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED AND FAILURE TO RENDER MEDICAL CARE BY JOHN DOE CORRECTIONAL OFFICERS

71.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

72.     Defendants had subjective knowledge that Amanda Cahill had a serious medical condition, was suffering from the effects of addiction and substance abuse, and was having a medical crisis.

73.     Defendants had subjective knowledge that Ms. Cahill required medical intervention to treat that medical crisis.

74.     Defendants had subjective knowledge that Ms. Cahill was at serious risk of severe physical symptoms and/or death if medical intervention was not provided.

75.     Despite Defendants' subjective knowledge of the numerous risks, they did not provide Ms. Cahill appropriate evaluation, monitoring or treatment.

76.     Defendants' failure to provide Ms. Cahill appropriate evaluation, monitoring or treatment constitutes deliberate indifference to her Eighth Amendment rights.

77.     At all times mentioned herein, the failure to render medical care to Ms. Cahill by Defendants was a violation of her Fourteenth Amendment rights in that it amounted to a deprivation of health, life, and property in violation of the Due Process Clause.

78.     As a result of Defendants' deliberately indifferent actions and/or omissions, Ms. Cahill sustained past and future economic loss, physical and mental pain, suffering, anguish, severe emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars ($10,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH JOHN DOE CORRECTIONAL OFFICERS' FAILURE TO PROTECT AMANDA CAHILL

79.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

80.     While incarcerated at PDP as a pre-trial detainee with known drug dependency issues, Amanda Cahill was held under conditions that posed a substantial risk of serious harm. She was placed in a facility with both a history of unimpeded drug use and distribution, and a history of the inability to monitor or care for people with serious drug dependency issues.

81.     The acts and/or omissions of Defendants consisted of one or more of the following, which created a dangerous situation in which Ms. Cahill was a foreseeable victim and was prevented from accessing life-saving care while incarcerated:

14

a.  failing to formulate, adopt, enforce, and/or follow adequate rules, policies, and procedures to detect and prevent drug contraband in PDP allowing for "unfettered" access to drugs;

b.  failing to formulate, adopt, enforce, and/or follow adequate rules, policies, and procedures to ensure the quality of care for inmates with drug use disorders;

c.  failing to conform to the accepted standard of medical care in the implementation, inspection, observation, treatment, management and/or clinical decision making related and/or pertaining to the care provided and/or omitted to Ms. Cahill directly causing, contributing, and/or increasing the risk of overdose and/or death;

d.  failing to properly create, implement, execute, follow, and/or enforce proper and necessary policy, procedures and/or protocols for medical assessments, critical decisions, and/or management of care;

e.  failing to administer naloxone (i.e., Narcan®) and/or other approved medications to treat overdose;

f.  failure to maintain surveillance and communication equipment that enables inmates to call for assistance;

g.  failing to conduct regular monitoring of inmates;

h.  failure to respond to overdose and render aid in a timely manner;

i.  failing to provide access to general examination and treatment;

j.  failing to provide access to specialist examination and treatment;

k.  failing to apply the appropriate policies, procedures, and protocols for the management of patients that require monitoring and substance abuse support, including medication assisted treatment (MAT) despite having the policies to support opioid use disorder; and

l.  permitting the trafficking of illegal drugs including fentanyl within the Philadelphia jails.

82.    Ms. Cahill's death was a foreseeable and direct result of the deliberate indifference of Defendant enforcing a policy of arresting medically vulnerable populations with the knowledge that PDP facilities could not provide appropriate care during their detention. They caused and/or increased the risk of Ms. Cahill experiencing overdose and/or death.

83.    Defendants knew that PDP was overrun with drugs, and were still deliberately indifferent to the substantial risk to inmate health and safety, including the risk of fatal overdose, by not monitoring inmates and allowing unimpeded access to contraband.

84.    Four months after Ms. Cahill's death, in December 2024 PDP correctional officers Roderick Price and Christina Ingram were arrested and charged with "corrupt organization, criminal conspiracy, dealing in illegal proceeds, possession with intent to distribute controlled substances, and related charges" for smuggling contraband and narcotics into PDP. They had separate, ongoing operations and were not working in conjunction with each other.[17]

85.    As a direct and proximate result of the carelessness and deliberate indifference of Defendants, as described herein, Ms. Cahill has sustained past and future economic loss, physical and mental pain, suffering, anguish, emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985    and    1988,    and    any    other    remedies    legally    appropriate.

## COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED AGAINST THE CITY OF PHILADELPHIA

86.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

---

[17] "2 correctional officers charged for smuggling contraband, narcotics into CFCF." By Kaleah Mcilwain. Published December 17, 2024. https://www.nbcphiladelphia.com/news/local/2-correctional-officers-charged-for-smuggling-contraband-narcotics-into-cfcf/4056832/ Last accessed Sept. 9, 2025.

87.     Defendant the City of Philadelphia had a widespread practice of understaffing its jails leading up to and during the period of Ms. Cahill's incarceration.

88.     As a result of this practice, upon information and belief, there were insufficient corrections officers to properly supervise Ms. Cahill's block, permitting her yells for help and those of fellow inmates to go unanswered for hours.

89.     The City's practice of understaffing also led to Ms. Cahill's lack of access to addiction related medical care as outlined above.

90.     The City's practice of understaffing was the moving force behind the violation of Ms. Cahill's Fourteenth Amendment rights.

91.     As a direct and proximate result of the City's deliberate indifferent practices, as described herein, Ms. Cahill has sustained past and future economic loss, physical and mental pain, suffering, anguish, emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT IV: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH THE CITY OF PHILADELPHIA'S FAILURE TO PROTECT AMANDA CAHILL—MONELL LIABILITY

92.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

93.     Defendant conducted targeted sweeps of medically vulnerable populations, including those with opioid use disorder, with a knowing disregard of PDP's inability to follow

their own policies. This allowed for unfettered access to drugs without the ability to provide life-saving resources to people with opioid use disorder due to decades of staffing and security issues in PDP.

94.     Defendant failed to act affirmatively to address understaffing, unsafe facilities, and unfettered frug use, though the need to take some action to control the agents of the government is so obvious that the inadequacy of existing practice violates inmate's constitutional rights.

95.     In fact, on August 16, 2024 the Eastern District of Pennsylvania held the Defendant City in contempt of court for failing to remedy unconstitutional jail conditions as per a 2022 settlement agreement. The Defendant was ordered to pay $25 million into a dedicated jail operations fund to be overseen by the court and boost staffing immediately.[18]

96.     Defendant's consistent and ongoing practice of deficient staffing created constitutional deficiencies in the following areas:

a.     significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision;

b.     inadequate policies and practices to protect incarcerated individuals from overdoses, along with failure to train staff to drug screen and administer overdose treatment;

c.     inadequate drug interdiction within PDP allowing the trafficking of drugs within the facilities;

d.     inadequate monitoring and treatment for inmates with emergent medical needs;

e.     inadequate access to healthcare; and,

f.     inadequate access to healthcare outside of the facility.

---

[18] "Held in contempt over jail conditions, Philly must pay $25M and quickly boost staffing, a judge has ordered" by Samantha Melamed. THE PHILADELPHIA INQUIRER.  Published Aug. 18, 2024. https://www.inquirer.com/news/philadelphia/jails-contempt-order-25-million-class-action-prisoners-civil-rights-20240818.html Last accessed Sept. 9, 2025.

97. Defendants' consistent and ongoing practice of understaffing, which perpetuates a known dangerous environment for inmates, threatens PDP inmates' right to access adequate healthcare and treatment.

98. Ms. Cahill's death was a foreseeable and direct result of the deliberate indifference of Defendant enforcing a policy of arresting medically vulnerable populations with the knowledge that PDP facilities could not provide appropriate care during their detention, nor could it prevent the trafficking of illegal and dangerous drugs within the jails. Defendant caused and/or increased the risk of Ms. Cahill experiencing overdose and/or death.

99. Defendant's consistent and ongoing practice of deficient staffing and monitoring was a moving cause behind the pain, agony, and untimely death suffered by Amanda Cahill.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

Respectfully submitted,

**McELDREW PURTELL**

*/s/ John J. Coyle*
John J. Coyle, Esq.
Mark V. Maguire, Esq.
Beulah Agbabiaka, Esq.*
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jcoyle@mceldrewpurtell.com
mmaguire@mceldrewpurtell.com
bagbabiaka@mceldrewpurtell.com
Date: September 15, 2025       *Application for admission forthcoming*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISCTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| IAN M. RICHETTI, ADMINISTRATOR : | |
| OF THE ESTATE OF AMANDA CAHILL, : | |
| DECEASED : | |
| 609 West Hamilton Street, Suite 301 : | |
| Allentown, PA 18101 : | |
| *Plaintiff* : | |
| : | |
| v. : | |
| : | |
| CITY OF PHILADELPHIA : | Civil Action No. |
| 1515 Arch Street, Suite 15 : | |
| Philadelphia, PA  19102 : | |
| : | |
| and ; | |
| : | |
| JOHN DOES 1-10 : | |
| 8301 State Road : | |
| Philadelphia, PA 19136 : | |
| : | |
| and : | |
| : | |
| ABC CORPS. 1-5 : | |
| 8301 State Road : | |
| Philadelphia, PA 19136 : | |
| *Defendants* | |

---

## CIVIL ACTION COMPLAINT

NOW COMES Ian Richetti, as Administrator for the Estate of Amanda Cahill, complaining of Defendants the City of Philadelphia, John Does #1-10 and ABC Corps. #1-5 and for cause would show the Honorable Court as follows:

## NATURE OF THE CASE

1.      On September 7, 2024, Amanda Cahill ("Ms. Cahill") died from the effects of suspected untreated Fentanyl overdose while incarcerated at the Philadelphia Institutional

1

Correctional Center. Overdose is treatable medical emergency. Defendants were aware of her condition and knew that she required monitoring and treatment as she recovered, yet failed to provide them. Defendants' deliberate indifference to Ms. Cahill's serious medical condition is the cause of Ms. Cahill's unnecessary and preventable death.

## PARTIES, JURISDICTION AND VENUE

1.    Plaintiff, Ian Richetti, is the duly appointed administrator of the Estate of Amanda Cahill and is an adult individual and resident of the Commonwealth of Pennsylvania.

2.    This action is brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the Constitution of the Commonwealth of Pennsylvania, and Pennsylvania Law.

3.    This cause of action arose in Philadelphia County, Pennsylvania.

4.    Defendant, City of Philadelphia, a City of the First Class organized and existing under the laws of the Commonwealth of Pennsylvania was responsible for the creation and operation of the Philadelphia Department of Prisons (hereinafter "PDP") including, but not limited to, the Philadelphia Industrial Correctional Center (hereinafter "PICC"). PICC is located at 8301 State Road, Philadelphia, Pennsylvania.

5.    Defendants John Does 1-10, fictitious names whose present identities are unknown, are unidentified persons who, at all times material hereto, were employees, agents and/or servants of the City of Philadelphia and were acting under color of state law in the course and scope of their duties at the PICC.

6.    Defendants ABC Corporations 1-5, fictitious names whose present identities are unknown, are unidentified persons and/or entities who, at all times material hereto, contracted with the City of Philadelphia to provide medical treatment to people incarcerated at PICC and were responsible for hiring competent medical providers, implementing and enforcing appropriate

2

policies, procedures, protocols, customs, and practices for the care of PICC's inmates, and training, supervising, and disciplining those medical providers to ensure their competence.

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of the Fourteenth Amendment rights of Amanda Cahill. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §§ 1367 to adjudicate pendent state law claims.

8.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b)(2) where the events or omissions giving rise to the Plaintiffs' federal claims occurred within the geographical limits of this District.

9.      This action is also brought under the laws of the Commonwealth of Pennsylvania as Wrongful Death and Survival action pursuant to claims arising from Defendants' deliberate and malicious indifference in failing to adequately staff PICC for proper supervision of incarcerated people and failing train its various personnel in the recognition and treatment of medical issues in arrestees and incarcerated people and further depriving decedent Amanda Cahill of her rights to both due process, equal protection, and emergency medical care while incarcerated.

## FACTUAL BACKGROUND

8.      On September 4, 2024, Amanda Cahill was arrested on possession of drug charges during a coordinated police sweep in Kensington, Philadelphia.

9.      The sweep was part of the City's ongoing initiative to "clean up" Kensington, which has included increased police presence, the dismantling of unhoused encampments, and coordinated mass arrests in the Kensington neighborhood, beginning in May of 2024.[1]

---

[1] "9 months after Kensington cleanup, Philly officials offer progress report" by Tom MacDonald. THE PHILADELPHIA TRIBUNE. Feb. 25, 2025. https://www.phillytrib.com/9-months-after-kensington-cleanup-philly-officials-offer-progress-report/article_df1a0b95-1d39-5600-94f7-09d914bb0aeb.html. Last accessed Aug. 23, 2025.

10. On September 4, 2024, after being arrested and booked at the Philadelphia Police Department headquarters located at 400 N. Broad Street, Philadelphia, PA 19123, Ms. Cahill was taken by EMS transport to Pennsylvania Hospital, located at 800 Spruce Street, Philadelphia, PA 19107 to be treated for addiction related issues.

11. Upon information and belief, Ms. Cahill was subsequently transferred to PICC that same day or the following day. Medical treatment housing was available, but Ms. Cahill was placed in general population.

12. Upon information and belief, while incarcerated at PICC, Ms. Cahill was acutely, objectively and obviously suffering from addiction and substance abuse.

13. Upon information and belief, Ms. Cahill did not receive regular medical evaluations and/or monitoring during her stay at PICC, despite exhibiting outward and obvious symptoms of substance abuse issues.

14. Dangerous physical symptoms, including a potentially fatal overdose, are known risks of substance abuse issues.

15. Upon information and belief, during the early morning hours of September 7, 2024, Ms. Cahill repeatedly and consistently cried out for medical attention from the confines of her cell, begging for help and banging on the walls in order to capture the attention of the guards on duty.

16. Upon information and belief, multiple inmates in the immediate area of Ms. Cahill's cell were aware of her medical condition and, believing her to be in immediate danger, yelled out and banged on the walls in order to assist in capturing the guards' attention.

17. Despite the repeated and desperate efforts of Ms. Cahill and the other inmates, Ms. Cahill was not evaluated or provided any medical attention whatsoever.

18. John Doe(s) correctional officer(s) completing mandatory surveillance and patrolling in the cell blocks had subjective knowledge of Ms. Cahill's medical emergency and failed to administer life-saving care.

19. At approximately 7:45 a.m. on September 7, 2024, Ms. Cahill was found unresponsive in her cell at PICC.

20. Upon information and belief, Ms. Cahill's cause of death was suspected fentanyl overdose, an otherwise treatable and preventable medical emergency.

21. Based on the autopsy, Ms. Cahill's vitreous fentanyl levels indicate that the fatal dose of fentanyl was consumed within hours of her death.

22. Therefore, upon information and belief, Ms. Cahill was sold and/or given fentanyl while in the custody of the City of Philadelphia.

23. The use and trafficking of illegal drugs within Philadelphia Prisons has been wide spread and well known to the City and has been exacerbated by the City's chronic understaffing of the jails.

## **FAILURES OF THE PHILADELPHIA DEPARTMENT OF PRISONS**

24. For years, the PDP has displayed a consistent and systemic failure to maintain proper staffing practices, resulting in a significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision.

25. Prison Commissioner Michael Resnick (who assumed his post on April 8, 2024 after prior Prison Commissioner Blanche Carney's retirement, and had previously been the Acting Prison Commissioner in 2016) as well as Warden Earicka Patterson and prior Warden Norman Williams have long been aware of the dangers created by their failure to maintain proper staffing.

26.     Not only did the City of Philadelphia tolerate the escalating danger from their lack of staffing, but prior Commissioner Blanche Carney also went so far as to blame the issue on the general staffing shortages caused by the COVID-19, despite evidence that this practice existed long before the pandemic.

*PDP's Established Practice of Understaffing*

27.     According to the Philadelphia Office of the Controller, from 2019 to April of 2021 the PDP saw staff vacancies triple and conditions within the facilities become increasingly unsafe.[2]

28.     During her tenure, former City Controller Rebecca Rhynhart expressed concern with staffing, stating:

> In June, my office released an analysis of the Department of Prisons, showing the department was operating 382 officers below the approved level for officer and inmate safety. The city made considerable progress reducing the prison population between 2015 and 2019, but the population has only decreased by about 2% since 2019. Prison staffing levels, meanwhile, have dropped by 28% over the same time."

29.     This assessment was based on data provided by PDP which showed that from 2019 – 2021, correctional staffing declined by 440 officers and only 119 new officers were hired within that same period. At the time of the statement, Rhynhart indicated that more than 300 COs were needed to meet adequate staffing.

30.     The City of Philadelphia acknowledged the danger that the staffing shortages create, pointing to the five inmate on inmate homicides in PDP facilities from August 2020 – May 2021. A total that exceeded the prior eight years combined.

---

[2] Philly's shockingly inhumane prison conditions by Rebecca Rhynhart: THE PHILADELPHIA INQUIRER. Published Oct. 6, 2021
https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html

31.     The *Philadelphia Inquirer*, frequently reported on the failures of the PDP, including an April 23, 2021 article that stated that there were shifts where as many as 14 of the 15 workers abandoned their shifts.[3]

32.     On May 19, 2021 it was reported that 64% of staff called out on Mother's Day weekend.[4]

33.     Prior Commissioner Carney acknowledged that PDP was short 333 staff positions.

34.     This number continued to grow, and in June 2021 it was then reported that PDP was short 382 officers needed to operate safely.

35.     By August 26, 2021 the gap had grown to 483 officers.

36.     In an August 26, 2021 report, the Pennsylvania Prison Society executive Director Claire Shubik-Richards stated "we have been warning the city for months that the prison is dangerous, unconstitutional in its conditions, and past the boiling point."[5]

37.     Correctional officers, including lieutenants, captains, and veterans of more than 20 years, told the Inquirer in October 2021 that the conditions in PDP facilities are the "worst they have ever seen."[6]

38.     It was then reported that the number of staff needed to operate safely had grown to 500.

---

[3] "Another assault at Philly jail leaves a man on life support and staff and prisoners warning of a crisis" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published April 23, 2021. https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html. Last accessed Aug. 23, 2025

[4] "Can Philly jails be forced to pay bail fund $10,000 a day? That's the ask in a federal lawsuit." by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html. Last accessed Aug. 23, 2025

[5] "'We need help': Video, reports depict violence and 'riots' at Philadelphia jails" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published August 26, 2021. https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html Last accessed Aug. 23, 2025.

[6] "Philly's shockingly inhumane prison conditions | Opinion" by Rebecca Rhynhart. THE PHILADELPHIA INQUIRER. Published Oct. 6, 2021. https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html. Last accessed Aug. 23, 2025

39.    Highlighting the danger in the Philadelphia Prisons is the fact that the PDP inmate population fell by 2% since 2019, yet over that same period seen staffing levels dropped by 28%.[7]

40.    On November 4, 2021, an analysis of PDP staffing rosters found that 20-30% of shifts on a given day were filled by officers and supervisors working overtime, and more than 40% of shifts listed were not filled at all.[8]

41.    David Robinson, the president of the correctional officers' union, Local 159 of AFSCME District Council 33, stated that "we're in a situation where we don't have staff. That makes the prisons dangerous…they had an obligation to keep these jails safe. And I'm going to be honest: I believe they failed."[9]

42.    By the November report, the City Controller's office claimed a 28% vacancy rate within PDP.

43.    Commissioner Carney suggested then and has since continued to suggest that the COVID-19 pandemic is to blame, however at the same time the Pennsylvania Department of Corrections reported only a 5.6% vacancy rate.

### *PDP's History of Unaddressed Security Issues*

44.    During the week of September 21, 2022 the PDP decided to move its increasing women's population from the Alternative and Special Detention Central Unit to the Philadelphia Industrial Correctional Center.[10] They did this despite knowing the history of unaddressed security and staffing issues at PICC.

---

[7] *Id.*
[8] "Stabbings at Philly jail went unnoticed amid staff shortages, video shows" by Samantha Melamed and Dylan Purcell. THE PHILADELPHIA INQUIRER. Published Nov. 4, 2021. https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html. Last accessed Aug. 23, 2025
[9] *Id.*
[10] "Philly jails see increase in women who are incarcerated, move to consolidate population" By Tom MacDonald. PBS WHYY PUBLIC MEDIA FOR PENNSYLVANIA, DELAWARE, NEW JERSEY. Sept. 21, 2022. https://whyy.org/articles/philly-jails-increase-in-women-incarcerated-move-to-consolidate-population/. Last accessed Aug. 23, 2025.

45.     Nasir Grant and Ameen Hurst escaped from PICC on Sunday, May 7, 2023, and at a November 1, 2023 Public Safety Hearing, Philadelphia District Attorney Larry Krasner detailed the security failings at the facility dating back over ten years.[11]

46.     These failings include: motion sensors being turned off for over ten, the fence that the two men escaped from being cut and staff aware of it days before the escape, prison staff not finding out about the escape for 19 hours because staff were not doing physically doing the count and instead reporting prior numbers, a single staff member watching the entire cell block area asleep in her chair, and problems with the video surveillance technology and cameras not being monitored.

47.     DA Krasner explained that it took 90 seconds for Hurst and Grant to get out, and that "[b]efore this escape ever occurred, we all knew there were issues that were occurring".

48.     Bringing women with substance abuse issues to an environment with these known security and staffing issues represents deliberate and malicious indifference to serious medical need.

49.     Indeed the very failures to do a physical inspection count and to monitor the block, allowed Ms. Cahill's pleas for help to be left unaddressed.

*PDP's History of Unaddressed Drug Abuse in its Facilities*

50.     PDP has unfettered access to drugs, illuminated by their persistent pattern of drug overdoses and a deficiency in their response to the rampant drug problem.

51.     In 2023, a Philadelphia Inquirer review of medical examiner's data and court records has found that "at least 25 people who have died in the Philadelphia jails since 2018 of

---

[11] "Issues dating back more than a decade led to Philly prison escape, DA says" by Deanna Durante. NBC PHILADELPHIA. Published November 1, 2023. https://www.nbcphiladelphia.com/news/local/issues-dating-back-more-than-a-decade-led-to-philly-prison-escape-da-says/3683707/. Last accessed Aug. 23, 2025.

accidents related to drug intoxication." Importantly, "Some of the deaths were from overdoses; other people were going through withdrawal when they died, according to court filings."[12]

52.     Over one weekend in March of 2020, at PDP's Curran-Fromhold Correctional Facility, four men who arrived at the jail on drug charges overdosed and three of them died. All four cases involved fentanyl.[13]

53.     Andrew Drury, 42, was found unresponsive in the intake room of Curran-Fromhold Correctional Facility three days after his arrest in Kensington on drug charges. Just like Ms. Cahill, he was evaluated and received off-site medical treatment before being transferred to the jail and overdosing there. At least 29 people with substance abuse issues have died in Philadelphia jail or police custody since 2018 for reasons that appear connected to drug intoxication or withdrawal, according to medical examiner records reviewed by The Philadelphia Inquirer.[14]

54.     While Dr. Bruce Herdman, chief of medical operations for the Philadelphia Department of Prisons, admitted to only 19 overdose deaths in the city's jails since 2019, that number is still jarring and unacceptable. Dr. Herdman stated "the officer staffing shortage makes it difficult to deliver timely, high-quality care for the approximately 4,700 people incarcerated in Philadelphia's jails daily – a majority of whom present with substance use disorder." And that of those 19 overdose deaths, 16 died within the first week of arrival.[15]

---

[12] "Drug deaths and overdoses plague Philly jails, raising concerns about plans to step up Kensington arrests" by Samantha Melamed and Aubrey Whelan. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia/kensington-drug-arrests-jails-overdose-deaths-philadelphia-20240707.html?ref=kensingtonvoice.com. Last accessed Aug. 23, 2025
[13] Philadelphia prisons investigating 4 overdoses, including 3 deaths, in custody" by Samantha Melamed. THE PHILADELPHIA INQUIRER. Published March 4, 2020. https://www.inquirer.com/news/philadelphia-prison-drug-overdose-fentanyl-heroin-deaths-20200304.html
[14] "A man in addiction who was arrested in Kensington last week died in jail days later" by Ellie Rushing and Samantha Melamed. THE PHILADELPHIA INQUIRER. Published March 11, 2025. https://www.inquirer.com/crime/inmate-death-philadelphia-jail-kensington-addiction-20250311.html Last accessed Sept. 9, 2025.
[15] "As city leaders eye jail to clean up Kensington, Philly jails say they're stretched too thin." by Sammy Caiola and Jillian Bauer-Reese. KENSINGTON VOICE. Published June 14, 2024. https://www.kensingtonvoice.com/jail-to-clean-kensington-drug-market-philly-jails-understaffed/ Last accessed Sept. 9, 2025.

55.     Incarcerated people are regularly being hospitalized for overdoses in Philadelphia Department of Prison's extremely understaffed facilities, and prisoners with serious health concerns resulting from drug dependency and abuse cannot be safely treated there. The City of Philadelphia has fostered an unsafe environment in the PDP, then rounded up individuals with serious addiction issues and locked them away in a location where the City knows they were not and cannot access help or treatment.

56.     While PDP has policies in place to provide medications for opioid use disorder, "severe short-staffing has hamstrung those policies — and fueled a climate of disorder and violence in the jails, which in the last few years have seen riots, a string of escapes, and dozens of deaths."[16]

57.     The acts and failures to act by City personnel and healthcare professionals to appropriately monitor and provide care to Amanda Cahill led to her untimely death.

## **WRONGFUL DEATH ACTION**

58.     Plaintiff brings this action pursuant to the Wrongful Death Act of the Commonwealth of Pennsylvania, 42 Pa.C.S.A. § 8301, to recover damages for the wrongful death of Amanda Cahill.

59.     No other action has been brought to recover for Amanda Cahill's death under the aforementioned statute.

---

[16] "Drug deaths and overdoses plague Philly jails, raising concerns about plans to step up Kensington arrests" by Samantha Melamed and Aubrey Whelan. THE PHILADELPHIA INQUIRER. Published July 7, 2024. https://www.inquirer.com/news/philadelphia/kensington-drug-arrests-jails-overdose-deaths-philadelphia-20240707.html?ref=kensingtonvoice.com. Last accessed Aug. 23, 2025.

60.    Decedent's survivors are her mother Gina Clark and sons, J.C. and J.M., minors who are entitled to recover damages for her death, and on whose behalf this action is brought pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 et seq.

61.    Ms. Cahill's death was caused by intentional, malicious, and/or grossly negligent conduct of said Defendants, individually and/or jointly.

62.    As a direct and proximate result of the Defendants' individual and joint actions, Amanda Cahill was unnecessarily caused extreme physical pain, mental anguish and suffering, and death, and was deprived of the enjoyment and pleasure of life.

63.    As a further direct and proximate result of said Defendants' actions, decedent's survivors have suffered serious emotional pain and economic loss due to the wrongful death of Amanda Cahill.

64.    Plaintiff claims all available damages under the Wrongful Death Act of the Commonwealth of Pennsylvania for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contributions that Amanda Cahill, would have rendered to the wrongful death beneficiaries but for her traumatic, untimely and unnatural death occurring as a result of the unlawful acts and omissions which are subject to the present litigation.

65.    Plaintiff claims damages for all medical bills and/or expenses.

66.    Plaintiff claims all damages for payment of funeral or burial expenses.

## **SURVIVAL ACTION**

67.    Plaintiff hereby incorporates all preceding paragraphs as is fully stated herein.

68.    Plaintiff brings this action pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. § 8302, for all recoverable damages under the Statute, including but not limited to loss of earnings, loss of earning power, loss of earning capacity, pain and suffering and emotional distress.

69.    As a direct and proximate result of said Defendants' actions as described herein, Amanda Cahill suffered grievous bodily injury, and mental and physical pain and suffering.

70.    From the time she was brought to PPIC until the time of her death, and throughout her detention, Ms. Cahill was conscious and aware of the denial of medical care and other harmful acts to which she was subjected by the Defendants, individually and/or jointly, and felt extreme pain and suffering as a result thereof while begging for help to save her life.

### COUNT I: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED AND FAILURE TO RENDER MEDICAL CARE BY JOHN DOE CORRECTIONAL OFFICERS

71.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

72.    Defendants had subjective knowledge that Amanda Cahill had a serious medical condition, was suffering from the effects of addiction and substance abuse, and was having a medical crisis.

73.    Defendants had subjective knowledge that Ms. Cahill required medical intervention to treat that medical crisis.

74.    Defendants had subjective knowledge that Ms. Cahill was at serious risk of severe physical symptoms and/or death if medical intervention was not provided.

75.    Despite Defendants' subjective knowledge of the numerous risks, they did not provide Ms. Cahill appropriate evaluation, monitoring or treatment.

76.    Defendants' failure to provide Ms. Cahill appropriate evaluation, monitoring or treatment constitutes deliberate indifference to her Eighth Amendment rights.

77.     At all times mentioned herein, the failure to render medical care to Ms. Cahill by Defendants was a violation of her Fourteenth Amendment rights in that it amounted to a deprivation of health, life, and property in violation of the Due Process Clause.

78.     As a result of Defendants' deliberately indifferent actions and/or omissions, Ms. Cahill sustained past and future economic loss, physical and mental pain, suffering, anguish, severe emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars ($10,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH JOHN DOE CORRECTIONAL OFFICERS' FAILURE TO PROTECT AMANDA CAHILL

79.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

80.     While incarcerated at PDP as a pre-trial detainee with known drug dependency issues, Amanda Cahill was held under conditions that posed a substantial risk of serious harm. She was placed in a facility with both a history of unimpeded drug use and distribution, and a history of the inability to monitor or care for people with serious drug dependency issues.

81.     The acts and/or omissions of Defendants consisted of one or more of the following, which created a dangerous situation in which Ms. Cahill was a foreseeable victim and was prevented from accessing life-saving care while incarcerated:

a.  failing to formulate, adopt, enforce, and/or follow adequate rules, policies, and procedures to detect and prevent drug contraband in PDP allowing for "unfettered" access to drugs;

b.  failing to formulate, adopt, enforce, and/or follow adequate rules, policies, and procedures to ensure the quality of care for inmates with drug use disorders;

c.  failing to conform to the accepted standard of medical care in the implementation, inspection, observation, treatment, management and/or clinical decision making related and/or pertaining to the care provided and/or omitted to Ms. Cahill directly causing, contributing, and/or increasing the risk of overdose and/or death;

d.  failing to properly create, implement, execute, follow, and/or enforce proper and necessary policy, procedures and/or protocols for medical assessments, critical decisions, and/or management of care;

e.  failing to administer naloxone (i.e., Narcan®) and/or other approved medications to treat overdose;

f.  failure to maintain surveillance and communication equipment that enables inmates to call for assistance;

g.  failing to conduct regular monitoring of inmates;

h.  failure to respond to overdose and render aid in a timely manner;

i.  failing to provide access to general examination and treatment;

j.  failing to provide access to specialist examination and treatment;

k.  failing to apply the appropriate policies, procedures, and protocols for the management of patients that require monitoring and substance abuse support, including medication assisted treatment (MAT) despite having the policies to support opioid use disorder; and

l.  permitting the trafficking of illegal drugs including fentanyl within the Philadelphia jails.

82.    Ms. Cahill's death was a foreseeable and direct result of the deliberate indifference of Defendant enforcing a policy of arresting medically vulnerable populations with the knowledge that PDP facilities could not provide appropriate care during their detention. They caused and/or increased the risk of Ms. Cahill experiencing overdose and/or death.

15

83.     Defendants knew that PDP was overrun with drugs, and were still deliberately indifferent to the substantial risk to inmate health and safety, including the risk of fatal overdose, by not monitoring inmates and allowing unimpeded access to contraband.

84.     Four months after Ms. Cahill's death, in December 2024 PDP correctional officers Roderick Price and Christina Ingram were arrested and charged with "corrupt organization, criminal conspiracy, dealing in illegal proceeds, possession with intent to distribute controlled substances, and related charges" for smuggling contraband and narcotics into PDP. They had separate, ongoing operations and were not working in conjunction with each other.[17]

85.     As a direct and proximate result of the carelessness and deliberate indifference of Defendants, as described herein, Ms. Cahill has sustained past and future economic loss, physical and mental pain, suffering, anguish, emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT - DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED AGAINST THE CITY OF PHILADELPHIA

86.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

---

[17] "2 correctional officers charged for smuggling contraband, narcotics into CFCF." By Kaleah Mcilwain. Published December 17, 2024. https://www.nbcphiladelphia.com/news/local/2-correctional-officers-charged-for-smuggling-contraband-narcotics-into-cfcf/4056832/  Last accessed Sept. 9, 2025.

87.     Defendant the City of Philadelphia had a widespread practice of understaffing its jails leading up to and during the period of Ms. Cahill's incarceration.

88.     As a result of this practice, upon information and belief, there were insufficient corrections officers to properly supervise Ms. Cahill's block, permitting her yells for help and those of fellow inmates to go unanswered for hours.

89.     The City's practice of understaffing also led to Ms. Cahill's lack of access to addiction related medical care as outlined above.

90.     The City's practice of understaffing was the moving force behind the violation of Ms. Cahill's Fourteenth Amendment rights.

91.     As a direct and proximate result of the City's deliberate indifferent practices, as described herein, Ms. Cahill has sustained past and future economic loss, physical and mental pain, suffering, anguish, emotional distress and death.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendant pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### COUNT IV: VIOLATION OF THE FOURTEENTH AMENDMENT THROUGH THE CITY OF PHILADELPHIA'S FAILURE TO PROTECT AMANDA CAHILL—MONELL LIABILITY

92.     Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

93.     Defendant conducted targeted sweeps of medically vulnerable populations, including those with opioid use disorder, with a knowing disregard of PDP's inability to follow

their own policies. This allowed for unfettered access to drugs without the ability to provide life-saving resources to people with opioid use disorder due to decades of staffing and security issues in PDP.

94.     Defendant failed to act affirmatively to address understaffing, unsafe facilities, and unfettered frug use, though the need to take some action to control the agents of the government is so obvious that the inadequacy of existing practice violates inmate's constitutional rights.

95.     In fact, on August 16, 2024 the Eastern District of Pennsylvania held the Defendant City in contempt of court for failing to remedy unconstitutional jail conditions as per a 2022 settlement agreement. The Defendant was ordered to pay $25 million into a dedicated jail operations fund to be overseen by the court and boost staffing immediately.[18]

96.     Defendant's consistent and ongoing practice of deficient staffing created constitutional deficiencies in the following areas:

a.     significant understaffing leading to an increase in inmate deaths directly related to the lack of supervision;

b.     inadequate policies and practices to protect incarcerated individuals from overdoses, along with failure to train staff to drug screen and administer overdose treatment;

c.     inadequate drug interdiction within PDP allowing the trafficking of drugs within the facilities;

d.     inadequate monitoring and treatment for inmates with emergent medical needs;

e.     inadequate access to healthcare; and,

f.     inadequate access to healthcare outside of the facility.

---

[18] "Held in contempt over jail conditions, Philly must pay $25M and quickly boost staffing, a judge has ordered" by Samantha Melamed. THE PHILADELPHIA INQUIRER.  Published Aug. 18, 2024. https://www.inquirer.com/news/philadelphia/jails-contempt-order-25-million-class-action-prisoners-civil-rights-20240818.html Last accessed Sept. 9, 2025.

97. Defendants' consistent and ongoing practice of understaffing, which perpetuates a known dangerous environment for inmates, threatens PDP inmates' right to access adequate healthcare and treatment.

98. Ms. Cahill's death was a foreseeable and direct result of the deliberate indifference of Defendant enforcing a policy of arresting medically vulnerable populations with the knowledge that PDP facilities could not provide appropriate care during their detention, nor could it prevent the trafficking of illegal and dangerous drugs within the jails. Defendant caused and/or increased the risk of Ms. Cahill experiencing overdose and/or death.

99. Defendant's consistent and ongoing practice of deficient staffing and monitoring was a moving cause behind the pain, agony, and untimely death suffered by Amanda Cahill.

**WHEREFORE**, Plaintiff demands judgement in his favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of Ten Million Dollars, including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

Respectfully submitted,

**McELDREW PURTELL**

*/s/ John J. Coyle*
John J. Coyle, Esq.
Mark V. Maguire, Esq.
Beulah Agbabiaka, Esq.*
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jcoyle@mceldrewpurtell.com
mmaguire@mceldrewpurtell.com
bagbabiaka@mceldrewpurtell.com
Date: September 15, 2025                    *Application for admission forthcoming